THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LIJUN ZHOU,
    *Petitioner*,

-against-

ONE CLINTON LLC,
    *Respondent*.

Civ. Case No.

**PETITION TO COMPEL COMPLIANCE
WITH AN ARBITRAL SUBPOENA**

Lijun Zhou, by and through her attorneys, Liu, Chen & Hoffman LLP, brings this action to enforce an arbitral subpoena against One Clinton LLC, and alleges as follows:

**Parties**

1. Petitioner Lijun Zhou ("Zhou") is a Chinese national residing in the People's Republic of China.

2. Respondent One Clinton LLC ("Clinton") is a Delaware limited liability company with its principal place of business in Manhattan, New York.

**Jurisdiction and Venue**

3. The Federal Arbitration Act, 9 U.S.C. §7, empowers a United States district court where an arbitrator is "sitting" to enforce the arbitrator's subpoenas. This case involves Clinton's failure to comply with an arbitral subpoena from an arbitrator sitting in Manhattan .

4. Diversity is an independent source of this Court's jurisdiction. In *Washington Nat'l Ins. Co. v. OBEX Group*, 958 F.3d 126, 139 (S.D.N.Y. 2020) and subsequent cases, this Court held that under 9 U.S.C. §7, diversity is satisfied by (i) adverse citizenship of the parties immediately before the federal court, and (ii) the underlying arbitration exceeding $75,000 in controversy.

1

Under this standard, diversity jurisdiction exists because Zhou has adverse citizenship to Clinton, and the amount in controversy in the underlying arbitration is $40 million.

5. Personal jurisdiction and venue are satisfied because Clinton has its principal place of business in Manhattan.

**Factual Allegations**

6. In 2017, Zhou and 220 foreigners each invested $500,000 (a total of $110 million) to purchase LLC units in BPL Funding 100 LLC ("BPL").

7. BPL is managed by Brooklyn Public Library Funding 100 GP LLC ("Manager").

8. In June 2017, BPL loaned Clinton the entire $110 million for a construction project connected to and adjacent to the Brooklyn Public Library (the "Loan").

9. The Loan was memorialized in a 2017 loan agreement that was amended and restated in 2021 (the "Loan Agreement").

10. Under the Loan Agreement, Clinton was required to satisfy certain preconditions to receiving the $110 million Loan, most notably a precondition that it had invested $81 million of its own money as equity into the project as a "Required Equity Investment" – however, it is not clear to this day whether Clinton made the Required Equity Investment or, alternatively, whether BPL/Manager waived this requirement.

11. Clinton defaulted on the Loan at its original maturity date, then defaulted on its extended maturity date in January 2024, so the maturity date was extended a final time to February 28, 2024.

12. On February 2, 2024, BPL emailed its members to inform them that Clinton would default on repaying the Loan at the final extended maturity date of February 28, 2024, leaving BPL with assets and collateral in the estimated range of $20-30 million—a loss exceeding $80 million (over 70%) that would be passed through to investors such as Zhou.

13. Zhou sought information from BPL and its Manager as to whether Clinton ever made its $81 million Required Equity Investment in the project, because tax records seemed to show that Clinton only contributed $41 million. The missing $40 million would be a 'cushion' or 'pot' from which BPL (and its members) could recoup the massive loss caused by Clinton's default.

14. BPL and the Manager refused to inform Zhou whether Clinton ever made the full $81 million Required Equity Investment or whether they waived Clinton's requirement to make the full investment.

15. On May 29, 2024, Zhou filed an arbitration proceeding against BPL and the Manager seeking (i) statutory inspection of BPL's books and records pertaining to the Loan, and (ii) damages for the Manager's failure to properly collateralize and manage the Loan (the "Arbitration").

16. The Arbitration was filed in the New York City branch of the American Arbitration Association ("AAA") pursuant to the following provision of the BPL Operating Agreement:

> §20(d). <u>Arbitration</u>. Any dispute, controversy or claim arising out of or in connection with, or relating to, this Agreement or any breach or alleged breach of this Agreement, except allegations of violations of federal or state securities laws, shall … be submitted to and settled by arbitration in the State of New York, pursuant to the rules then in effect of the American Arbitration Association (or at any other place or under any other form of arbitration mutually acceptable to the parties so involved), with venue in New York, New York.

17. In the Arbitration proceeding, the Arbitrator approved and signed a subpoena to Clinton dated September 9, 2024, seeking information and documents on whether Clinton made the full Required Equity Investment of $81 million and/or whether this requirement had been waived. See <u>Exhibit 1</u>.

18. Clinton, by their lawyers, responded by letter dated September 17, 2024, refusing to respond to the subpoena. See Exhibit 2.

19. The Federal Arbitration Act, 9 U.S.C. §7, empowers the district court where the arbitrator is "sitting" to compel any party to respond to an arbitral subpoena:

> The arbitrators … may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. … Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

20. By this federal statute, an action to enforce an arbitral subpoena should be brought in the judicial district where the arbitrator is "sitting," which is determined by where the arbitration hearing is required to take place and where the arbitration is being administered.

21. Here, the arbitrator is "sitting" in Manhattan, so the applicable judicial district is the Southern District of New York. See *Washington Nat'l Insurance Co. v. OBEX Group*, 958 F.3d 126, 139 (S.D.N.Y. 2020)(compelling defendant to respond to an arbitral subpoena); *Oleo-X LLC v. Saint Paul Commodities, Inc.*, No. 24-cv-04706-CM, 2024 WL 4277531 at *3 (S.D.N.Y. September 24, 2024)(compelling defendant to respond to an arbitral subpoena).

22. Clinton's failure to answer the arbitration subpoena is "contempt" and can be punished by imposition of a fine under 18 U.S.C. §401; such fine should include the Plaintiff's attorney fees and costs.

WHEREFORE, Plaintiff Zhou seeks an order compelling Clinton to answer the arbitration subpoena, and an award of attorney fees and costs.[1]

Dated: November 3, 2024

LIU, CHEN, & HOFFMAN LLP
/s/ Yong Chen
14 Penn Plaza, Suite 2020
New York, New York 10122
212-547-6694
ychen@ambizlaw.com

Attorneys for Petitioner

---

[1] Zhou advises this Court that, with the backing of 58 other investors, she filed a derivative lawsuit on behalf of BPL to recover the $110 million that Clinton failed to repay. *Zhou Lijun for BPL Funding 100 LLC v. One Clinton LLC*, Index 653862/2024 (New York County Supreme Court). Zhou brought the instant enforcement action in *federal* court (as opposed to appending it to the *state* court action) because 9 U.S.C. §7 specifies that federal district courts have original jurisdiction over the enforcement of arbitral subpoenas.